Hillsborough,
Jan. 5, 1937.

STANDARD OIL COMPANY OF NEW YORK, INC., & a.

*v.*

NASHUA STREET RAILWAY.

*Edward J. Lampron*, City Solicitor, for Nashua.

*Demond, Woodworth, Sulloway, Piper & Jones* (*Mr. Piper* orally), for Old Colony Trust Company.

*Laurence I. Duncan* and *Robert W. Upton* (*Mr. Duncan* orally), for the receiver.

ALLEN, C. J.   The Old Colony Trust Company is a mortgagee of property of the defendant.   It was stated by counsel without dissent, and it is therefore assumed, that possibly with some negligible exclusions all of the defendant's property sold by the receiver was included in the mortgage and that the proceeds of the property are far short of satisfying the mortgage debt.   It is concluded that the unsecured creditors will be paid nothing.   The receiver is not shown to have any funds from other sources available for any payment to them.   It follows that unless the city has a lien or an equitable claim of priority as against the mortgagee, the validity of any claim it may have as a general creditor does not need decision.   The unsecured claims being worthless, no rights are affected if they are not allowed. Without actual damage disallowance is no injury.

The city's claim for priority over the mortgage rests upon two propositions.   One is that the defendant's duty to keep in repair the streets or the part of them its tracks occupied is in the nature of an assessment liability, the city's performance of the work upon the defendant's default entitling it to priority.   The analogy does not exist.   The railway's duty to repair was not created for its benefit but was to relieve the public from the expense of highway maintenance caused by the railway's special use of the streets.   The railway received no special benefit from such maintenance as distinct from that to other users of the streets.   It was because its use produced increased highway maintenance costs, and not because of special benefit by reason of the special maintenance, that the duty to assume

the increased expense was imposed. The special use is the reason for the requirement to pay for its cost. The duty of maintenance is of the same nature as that of aqueduct and gas companies to restore streets to good condition at their own expense when under permission they dig them up to lay and maintain their pipes in them (P. L., c. 98). The railway is in no sense to be regarded as a property owner in some alliance with the public.

Highway safety was to be attained, both for the railway and those it carried as well as for other travelers. No enhancement of value to the defendant's property arose from the highway maintenance required of it, any more than to the property of others having occasion to use the highway area to be thus maintained. The special manner of use denotes no special benefit. And the requirement that the railway meet the expense of the special use is in no possible sense an assessment. No public undertaking is involved. No assessment beyond special benefit would be valid (*Manchester* v. *Straw*, 86 N. H. 390) and no such benefit being shown, the theory of an assessment liability has no basis for its support.

The city's other point to uphold its claim of priority is that the mortgagee may not equitably enforce its lien without subordination to the burden of maintenance placed upon the railway. The argument is that the railway's special maintenance of the streets was essential to give operative effect to the mortgage lien, and hence the maintenance expense became an underlying lien in equity. The brief answer is that no duties of the railway were assumed by the mortgagee. If its lien suffered in value by the railway's breach of its duties, it had no obligation to strangers to avoid the loss. It did not guarantee the performance of the railway's duties, and so far as it was benefited by the work done by the city, the benefit was unsought by it. No "specific legal principle or situation which equity has established or recognized" (*American University* v. *Forbes*, *ante*, 17) is suggested upon which to found an equitable priority.

In one aspect the situation is more favorable for the mortgagee than it would be if the operation of the railway had not been permanently discontinued when the city's work was performed. The mortgagee was not served in any respect by street maintenance after the discontinuance. The city then acted only in its own behalf and interest. It did nothing in protection of the mortgaged property or in aid of the sale of the property except to remove some of the rails. If the receiver's authority to dismantle the railway became a duty upon a sale, the city lost any statutory lien it may have had for the expense

of such removal as it made. The proceedings to enforce its lien if it had one were not employed as the statute (P. L., *c.* 92, *ss.* 1, 2) directs, and no equitable principle creates a new lien in replacement of the lost statutory one. The incidental benefit received by the mortgagee from the removal gave the city no legal or equitable right to have the mortgaged property charged with its expense, since, as has already been said, the mortgagee did not request the city to do any removing. Having no priority claim on such account, still less does it have one for its other expenses of street maintenance occasioned by the railway's discontinuance of business. Whatever the railway's duty, the lien of the mortgage was not adversely affected by the city's action in taking upon itself the performance of the duty.

While a receiver may be authorized to incur expenses to be paid as a primary charge against the receivership estate, they must be incurred for the care, preservation, and benefit of the estate. And the security of mortgaged property may not be impaired by the allowance from its proceeds of priority in respect to claims for matters not directed to the advantage of the security. The priority claimed here does not rest upon a claim of service rendered for any purpose of protecting or conserving the estate in receivership or of inurement of benefit to the mortgagee, except, as stated, in the removal of some of the rails. The railway's operation had ceased when the city's undertaking was performed. If there was a duty, statutory or otherwise, for the receiver to restore the streets to a proper trackless condition, the expense was not chargeable to the proceeds of property the mortgage of which appropriated it to other uses. If the city is an unsecured creditor, it is on the theory that in self-protection it had the right to discharge the receiver's duties and to have the expense charged to the general receivership funds. But performance of his duties was not secured by the mortgage, nor was it needed as a measure in protection of the mortgage.

*Case discharged.*

PAGE, J., was absent: the others concurred.